PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 16-3793

———

UNITED STATES OF AMERICA

v.

JOHN FRANCIS LEY,
                              Appellant

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. No. 2-15-cr-00227-001)
District Judge:  Honorable Terrence F. McVerry

———

Argued:  May 23, 2017
Before:  HARDIMAN, ROTH, and FISHER, *Circuit Judges*.

Lisa B. Freeland, Esq.

W. Penn Hackney, Esq.

Samantha L. Stern, Esq.  *[ARGUED]*
Office of Federal Public Defender
1001 Liberty Avenue, Suite 1500
Pittsburgh, PA 15222
	*Counsel for Appellant*


Soo C. Song, Esq.

Rebecca R. Haywood, Esq.

Laura S. Irwin, Esq.  *[ARGUED]*
Office of United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
	*Counsel for Appellee*

———


OPINION OF THE COURT

———


FISHER, *Circuit Judge*.

This case concerns the criminal history provisions of the Sentencing Guidelines. A defendant's criminal history is calculated by assigning points for prior sentences. The Guidelines instruct that prior sentences "always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest." United States Sentencing Commission, Guidelines Manual § 4A1.2(a)(2) (USSG). The question presented here is whether a traffic stop, followed by the issuance of a summons, constitutes an intervening arrest in the context of the criminal history Guidelines.

I

John Francis Ley pleaded guilty in the United States District Court for the Western District of Pennsylvania to a single count of being a convicted felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). According to the presentence investigation report prepared by the United States Probation Office, Ley sustained a 2006 conviction for felony aggravated assault in Pennsylvania. The report classified this conviction as a "crime of violence" under the career-offender Guideline, USSG § 4B1.2(a)(1), and recommended a base offense level of 20. *See Id.* § 2K2.1(a)(4)(A). Various adjustments produced a total offense level of 19.

The criminal history Guidelines require the cumulative counting of sentences for offenses that are separated by an intervening arrest. *Id.* § 4A1.2(a)(2). If there is no intervening arrest, however, prior sentences are counted as a single sentence if those sentences were imposed on the same day. *Id.* Ley's long criminal record earned him seven criminal history points with a criminal history category of IV. Two of those seven points were based on prior convictions for possession of drug paraphernalia. The first offense stemmed from a traffic

3

stop on September 28, 2015; the second from a traffic stop the following day.  After each, the police released Ley from the scene and advised him that the case would proceed via summons.  Ley pleaded guilty and was sentenced for both offenses on the same day in May 2016.  His total offense level and criminal history category together produced a Guidelines sentencing range of 46 to 57 months of imprisonment.

Ley objected to the presentence report, arguing that his two prior drug paraphernalia sentences should be treated as a single sentence because they were imposed on the same day and were separated not by an intervening arrest, but by a traffic stop, followed by the issuance of a summons to appear.  Had the sentences been treated as a single sentence, Ley argued, he would have only been assessed six criminal history points, resulting in a criminal history category of III, rather than IV, and a sentencing range of 36 to 47 months.

The District Court tentatively overruled Ley's objection.  Two days later, the Probation Office filed a supplemental addendum standing by its position in the presentence report.  Ley was eventually sentenced to 46 months' imprisonment, the lowest end of the applicable Guidelines range.  This appeal followed.

II

The District Court had jurisdiction under 18 U.S.C. § 3231.  This Court has jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.  We exercise plenary review over the District Court's interpretation of the Sentencing Guidelines, and review its factual findings for clear error.  *United States v. Georgiou*, 777 F.3d 125, 146 (3d Cir. 2015).

III

The central issue to be discussed requires the Court to

4

determine whether the word "arrest," as it appears in USSG § 4A1.2(a)(2), includes a traffic stop, followed by a summons to appear. If it does not, the District Court miscalculated Ley's criminal history and, by extension, his sentencing range. Before considering that question, we first address the Government's contention that the record establishes that Ley was subject to an intervening arrest.

A

The Government asserts that the supplemental addendum to the presentence report shows that, as a factual matter, Ley was arrested on September 28, 2015. Responding to Ley's objection to the presentence report's treatment of his drug paraphernalia convictions as separate sentences, the supplemental addendum states: "In this case, the defendant was arrested for the first offense . . . on September 28, 2015. [This] not only is supported by the narrative in [the presentence report], but also [by] the Magisterial District Court Docket Sheet, the defendant's sentencing order, and the defendant's rap sheet, all of which list the defendant's arrest date as 'September 28, 2015.'" But the supplemental addendum also forthrightly adds that "[d]efense counsel is correct that the defendant was released from the scene on September 28, 2015, *and [advised] that the case would proceed via summons*." *Id.* (emphasis added).

Nothing in the documents cited in the supplemental addendum indicates in any way that Ley was arrested on September 28, 2015. The narrative for that offense in the presentence report says not one word about an arrest. Nor can we say the listing of Ley's "arrest date" in the state court records—which were never produced in the District Court— demonstrates that Ley was in fact arrested. For all we know, those records treat the date of the issuance of a summons as an

5

"arrest date." Of course, we can only speculate—and speculation is all the Government has to work with here.

In our view, the supplemental addendum merely restates the legal dispute between the Government and Ley; it does not create a new factual one. As the District Court described the supplemental addendum at sentencing, the document serves as "the Probation Office's retort to [Ley's] position that the two arrests or two experiences with law enforcement in September [2015] that followed one day after another were not being treated as one offense," thus demonstrating the Probation Office's "agree[ment] with the [District] Court's finding that a [traffic stop, followed by a] summons counts as an arrest." App. 36. We agree with the District Court, and find it difficult to accept that the supplemental addendum stands for the factual proposition the Government ascribes to it.

The Government nonetheless insists that we should not entertain any of Ley's arguments concerning the supplemental addendum. Since Ley never raised an objection to the supplemental addendum either at sentencing or in his opening brief in this Court, the Government asserts that Ley waived any challenge to the facts set forth in that document. *See United States v. Joseph*, 730 F.3d 336, 342 (3d Cir. 2013) ("[T]o preserve an argument and avoid waiver, the argument presented in the Court of Appeals must depend on both the same legal rule and the same facts as the argument presented in the District Court."); *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal."). At the same time, the Government concedes that Ley has clearly preserved the legal issue of whether a traffic stop, followed by a summons, is an intervening arrest. The Government's claim of waiver

therefore rises or falls on the import of the supplemental addendum.

Our precedent on waiver draws a distinction between "issues" and "arguments"—"an issue can be broader in scope than an argument in that an issue may be addressed by multiple arguments, which are the most basic building blocks of legal reasoning." *Joseph*, 730 F.3d at 337. To preserve an argument for appeal, a party "must have raised the same *argument* in the District Court—merely raising an *issue* that encompasses the appellate argument is not enough." *Id.* (emphasis in original). As we have explained, the supplemental addendum adds no factual controversy to the pure legal dispute over the interpretation of the word "arrest." It follows that the Government's attempt to manufacture waiver must be rejected.

B

The Court now turns to the parties' dispute over the District Court's interpretation of the Sentencing Guidelines. Chapter 4 of the Guidelines contains provisions detailing the manner in which district courts are to compute a defendant's criminal history. Section 4A1.1 assigns various point values to prior sentences. The term "prior sentence" is defined as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense." USSG § 4A1.2(a)(1). Section 4A1.2(a)(2) sets forth what is known as the "single sentence" rule. In relevant part, it provides:

> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or treated as a single sentence. *Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest* (i.e., the

7

defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Treat any prior sentence covered by (A) or (B) as a single sentence.

USSG § 4A1.2(a)(2) (emphasis added). The Sentencing Commission first added the "intervening arrest" language in 1991 as an application note to section 4A1.2. USSG app. C, amend. 382 (effective Nov. 1, 1991). It was later moved to the body of section 4A1.2(a)(2) in 2011. *Id.* App. C, amend. 709 (effective Nov. 1, 2011).

Counting prior sentences as a single sentence can have significant consequences for a defendant. For Ley, it would mean one fewer criminal history point, resulting in a lower criminal history category and, in turn, a lower recommended sentencing range. The single sentence rule also applies to other aspects of the Guidelines, including classification as a career offender, *id.* § 4B1.2 cmt. n.3, and computation of the base offense level for certain crimes, *e.g.*, *id.* § 2K1.3 cmt. n.9 (offenses involving explosive materials); *id.* § 2K2.1 cmt. n.10 (offenses involving firearms or ammunition); *id.* § 2L1.2 cmt. n.3 (unlawful entering or remaining in the U.S.).

As with statutory interpretation, we "read Guidelines provisions for their plain meaning." *United States v. Stinson*, 734 F.3d 180, 184 (3d Cir. 2013) (internal quotation marks omitted); *see also Perrin v. United States*, 444 U.S. 37, 42 (1979) ("It is a fundamental canon" of textual interpretation that "unless otherwise defined, words will be interpreted as

8

taking their ordinary, contemporary, common meaning."). In ordinary usage, an "arrest" is "the taking or detainment (of a person) in custody by authority of law" or "legal restraint of the person; custody, imprisonment." *Webster's Third New International Dictionary* 109-10 (unabridged ed. 1993) (*Webster's Third*); *see also Black's Law Dictionary* 124 (9th ed. 2009) (*Black's*) ("The taking or keeping of a person in custody by legal authority, [especially] in response to a criminal charge . . . ."). A "summons," by contrast, is "a warning or citation to appear in court," such as "an order to appear to answer a criminal charge [usually] for a minor offense where arrest of the defendant is not regarded as appropriate or necessary." *Webster's Third* 2290; *see also Black's* 1574 ("A writ or process commencing the plaintiff's action and requiring the defendant to appear and answer.").

The ordinary usage of the term arrest does not sensibly include the issuance of a summons. Consider the everyday example of jaywalking. Out of concern for the safety of pedestrians and drivers alike, many states and municipalities—including every jurisdiction in the Third Circuit—make jaywalking unlawful. *See, e.g.*, Del. Code Ann. tit. 15 §§ 4108-09, 4141; N.J. Stat. Ann. §§ 39:4-32 to -34; 75 Pa. Cons. Stat. § 3543; V.I. Code Ann. tit. 23 §§ 410, 413-14, 416, 420. The Government confirmed its position at oral argument that a jaywalking summons would count as an arrest for purposes of the criminal history Guidelines. But were a summons actually treated as an arrest in the real world, the changes in settled expectations would be far-reaching. Government agencies ask about arrest records when hiring for jobs ranging from sensitive national security positions to police officers to prison guards. Similar examples abound, including private-sector employment applications, college admissions, visa applications, and background checks. *See United States v.*

9

*Leal-Felix*, 665 F.3d 1037, 1045 (9th Cir. 2011) (en banc) (McKeown, J., concurring). Treating a summons as an arrest, it is safe to say, "defies our common experience and would be a paradigmatic shift." *Id.*

It should come as no surprise, then, that constitutional criminal procedure jurisprudence has long distinguished arrests and summonses (and the summons's close sibling, the citation). Under the Fourth Amendment, for example, concerns for officer safety and preservation of evidence permit the police to conduct a warrantless search of an individual incident to arresting him. *See United States v. Robinson*, 414 U.S. 218 (1973). But in *Knowles v. Iowa*, 525 U.S. 113 (1998), the Supreme Court held that such authority does not extend to the issuance of a citation following a traffic stop. In so concluding, *Knowles* declined to analogize the issuance of a traffic citation to a formal, custodial arrest. *See id.* at 117 ("The threat to officer safety from issuing a traffic citation . . . is a good deal less than in the case of a custodial arrest.").

In the context of damages actions brought under 42 U.S.C. § 1983 for violations of the Fourth Amendment, this Court has refused to treat the issuance of a summons as a seizure, much less an arrest. In *DiBella v. Borough of Beachwood*, 407 F.3d 599 (3d Cir. 2005), we explained that the plaintiffs there "were only issued a summons; they were never arrested; they never posted bail; they were free to travel; and they did not have to report to Pretrial Services." *Id.* at 603.

Like this Court, the First, Second, and Seventh Circuits have determined that a summons requiring the appearance in court does not amount to a Fourth Amendment seizure. *See Britton v. Mahoney*, 196 F.3d 24, 30 (1st Cir. 1999); *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010); *Bielanski v. County of Kane*, 550 F.3d 632, 642 (7th Cir. 2008). The Sixth and

10

Tenth Circuits have reached the same conclusion when it comes to traffic citations. *See DePiero v. City of Macedonia*, 180 F.3d 770, 789 (6th Cir. 1999); *Martinez v. Carr*, 479 F.3d 1292, 1298-99 (10th Cir. 2007) (Gorsuch, J.); *see also Technical Ordnance, Inc. v. United States*, 244 F.3d 641, 651 (8th Cir. 2001) ("This circuit has never held that pretrial restrictions such as [a summons to appear in court] constitute a Fourth Amendment seizure."); 3 Wayne R. LaFave, *Search and Seizure* § 5.1(i), at p. 104 (5th ed. 2012) ("Resort to the citation or summons alternative is not in and of itself an arrest or, for that matter, any variety of Fourth Amendment seizure.").

A similar understanding of arrest is reflected in caselaw regarding *Miranda* warnings that the police must give suspects under custodial interrogation. A suspect is "in custody" for *Miranda* purposes when there is "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995) (internal quotation marks omitted). The Supreme Court has held, however, that a roadside interrogation of a motorist pulled over during a traffic stop is not a "formal arrest" because a motorist is not "completely at the mercy of the police," but instead expects a "presumptively temporary and brief" encounter in which "he may . . . be given a citation" and "in the end . . . most likely will be allowed to continue on his way." *Berkemer v. McCarty*, 468 U.S. 420, 437-38 (1984); *see also Maryland v. Shatzer*, 559 U.S. 98, 113 (2010) ("[T]he temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop does not constitute *Miranda* custody." (citation omitted)). This is so notwithstanding "the aura of authority surrounding an armed, uniformed officer" during a traffic stop "and the knowledge that the officer has some discretion in deciding whether to issue a citation."

11

*Berkemer*, 468 U.S. at 438. *Miranda* instead comes into play during a traffic stop "as of the moment [the suspect is] formally placed under arrest." *Id.* at 434.

The foregoing considerations, it is fair to conclude, all point in one direction: a traffic stop, followed by the issuance of a summons, is not an arrest. The Court therefore holds that, for purposes of section 4A1.2(a)(2) of the Sentencing Guidelines, an arrest is a formal, custodial arrest. This accords with the view of three other courts of appeals. The Sixth Circuit has held that the issuance of a summons for a felony aggravated assault charge is not an intervening arrest, *see United States v. Powell*, 798 F.3d 431, 436-40 (6th Cir. 2015), and the Ninth and Eleventh Circuits have held the same for the issuance of a traffic citation for driving with a suspended license. *See Leal-Felix*, 665 F.3d at 1040-44; *United States v. Wright*, 862 F.3d 1265, 1281-83 (11th Cir. 2017).

Only the Seventh Circuit sees things differently. In *United States v. Morgan*, 354 F.3d 621, 623-24 (7th Cir. 2003), a decision handed down when the Guidelines were still mandatory and binding on federal courts, the Seventh Circuit held that the issuance of a traffic citation counts as an intervening arrest under section 4A1.2(a)(2) of the Guidelines. *Morgan* observed that "[a] traffic stop is an 'arrest' in federal parlance." *Id.* at 624. But for reasons already discussed, that statement is incorrect. A traffic stop is not an arrest in federal parlance; it is "a relatively brief encounter and 'is more analogous to a so-called "*Terry* stop" than to a formal arrest.'" *Knowles*, 525 U.S. at 117 (quoting *Berkemer*, 468 U.S. at 439). Indeed, the Seventh Circuit later recognized as much with regard to summonses. *See Bielanski*, 550 F.3d at 642 ("No court has held that a summons alone constitutes a seizure, and we conclude that a summons alone does not equal a seizure for Fourth Amendment purposes.").

The two primary cases *Morgan* cites—*Whren v. United States*, 517 U.S. 806 (1996), and *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001)—cannot bear the weight the Seventh Circuit places on them. The question confronted in *Whren* had nothing to do with the authority of the police to arrest; the Supreme Court instead determined that the temporary detention of a motorist upon probable cause that a traffic violation occurred is objectively reasonable under the Fourth Amendment. 517 U.S. at 809-10. To be sure, while *Atwater* recognized that the Fourth Amendment does not prohibit a police officer from arresting an individual for a misdemeanor offense that could otherwise be answerable by a summons, 532 U.S. at 354, its holding does not *ipso facto* turn all such police encounters into an arrest. *Atwater* itself acknowledged that "there is a world of difference between making that judgment in choosing between the discretionary leniency of a summons in place of a clearly lawful arrest, and making the same judgment when the question is the lawfulness of the warrantless arrest itself." *Id.* at 350. And for good reason. As the Tenth Circuit aptly put it, equating the issuance of a traffic citation with a Fourth Amendment seizure might "disincentivize the use of citations, at least to a certain degree, a result inconsistent with the desire to mitigate intrusiveness on private citizens and recent efforts to encourage the use of citation in lieu of arrest procedure." *Martinez*, 479 F.3d at 1297 (footnote omitted).

The Seventh Circuit also rested its decision on the contention that "[c]alling a traffic stop an 'arrest' implements the Sentencing Commission's goal" of identifying recidivists. *Morgan*, 354 F.3d at 623. Again, we disagree. Both the sentencing statute and the Guidelines require that a defendant's sentence and criminal history not be overstated. *See* 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but

13

not greater than necessary . . . ."); *United States v. Fries*, 796 F.3d 1112, 1116 (9th Cir. 2015) ("The purpose of [section] 4A1.2 is to reflect the seriousness of a defendant's criminal history, while, at the same time, avoiding overstating the seriousness of the defendant's criminal conduct." (internal quotation marks and alterations omitted)).  By treating an intervening custodial arrest for a serious offense the same as the issuance of a summons for jaywalking or possession of drug paraphernalia, the Seventh Circuit's reading of section 4A1.2(a)(2) risks substantially overstating a defendant's criminal history.

While section 4A1.2(a)(2)'s single sentence rule may at times also understate the seriousness of a defendant's criminal history and the danger he presents to the public, the Guidelines advise district courts that in such a case "an upward departure may be warranted."  USSG § 4A1.2 cmt. n.3(B).  The Sentencing Commission has thus shown itself fully capable of responding to concerns about application of the single sentence rule.  If the issuance of a summons should be treated as an arrest under the criminal history Guidelines, the Commission knows how to do so.  That is its role.  Ours is a more modest one: to faithfully take account of the Guidelines validly promulgated by the Commission, and to interpret the text of those Guidelines according to its plain meaning.

IV

Ley raises two other issues for our consideration.  First, he contends that the District Court inappropriately enhanced his sentence when it determined that his prior Pennsylvania aggravated assault conviction was a "crime of violence."  And second, Ley says that the District Court improperly fixed his term of imprisonment based upon his need for rehabilitation, in contravention of 18 U.S.C. § 3582(a).  *See Tapia v. United*

14

*States*, 564 U.S. 319 (2011).  Since our disposition on the intervening arrest question is sufficient on its own to require resentencing, we do not address these additional arguments.

The judgment of the District Court will be vacated, and the case will be remanded for further proceedings consistent with this opinion.